IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Representative Bryan Cutler,                :
Leader of the Republican Caucus             :
of the Pennsylvania House of                :
Representatives,                            :
                                            :
                  Petitioner                :
                                            :
            v.                              :       No. 588 M.D. 2022
                                            :        Argued:  January 11, 2023
                                            :
Leigh M. Chapman, Acting Secretary          :
of the Commonwealth, The                    :
Pennsylvania Department of State,           :
and The Board of Elections of               :
Allegheny County,                           :
                                            :
                  Respondents               :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION
BY JUDGE WOJCIK                           FILED:  January 25, 2023

On December 9, 2022, Representative Bryan Cutler, Leader of the Republican Caucus of the Pennsylvania House of Representatives (Petitioner),[1] filed a Petition for Review in the Nature of a Complaint for Declaratory Judgment (Petition) in this Court's original jurisdiction against Leigh M. Chapman, Acting Secretary of the Commonwealth (Acting Secretary), the Pennsylvania Department of State (Department), and the Board of Elections of Allegheny County (Board) (collectively, Respondents), challenging the validity of three writs of election

---

[1] Petitioner is the duly elected member of the Pennsylvania House of Representatives for the 100th Legislative District.  (Stipulated Facts ¶ 1.)

(McClinton Writs) issued to the Department and the Board on December 7, 2022, by Joanna E. McClinton, Leader of the Democratic Caucus of the Pennsylvania House of Representatives (Intervenor McClinton),[2] in her purported capacity as "Majority Leader," relating to three vacancies in the House of Representatives (House). (Petition ¶¶ 1-2.) Intervenor McClinton issued the McClinton Writs following the adjournment *sine die* of the House on November 30, 2022, but prior to the House convening for the 2023-2024 Legislative Session, and set February 7, 2023, as the date for special elections to fill three vacant House seats in the 32nd, 34th, and 35th Legislative Districts in Allegheny County. (*Id.* ¶¶ 3, 18-21, 26, 38-41.) Put succinctly, Petitioner alleged that Intervenor McClinton issued the McClinton Writs without constitutional or statutory authority to do so, as she is neither the Speaker nor the Majority Leader of the House. Petitioner therefore sought a declaration under the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531-7541,[3] that the McClinton Writs are invalid as a matter of law, and that Respondents may not proceed with holding the February 7, 2023 special elections. (*Id.* ¶¶ 6-8, 35-37, 52-54, 69.)

Also on December 9, 2022, Petitioner filed an Emergency Application for Special Relief in the Nature of a Preliminary Injunction (Cutler Emergency Application), and thereafter a Brief in Support thereof, in which he averred the same facts as in the Petition and sought an order preliminarily enjoining Respondents from effectuating the McClinton Writs and holding the February 7, 2023 special elections

---

[2] Intervenor McClinton is the duly elected member of the Pennsylvania House of Representatives for the 191st Legislative District. (Stipulated Facts ¶ 3.)

[3] Petitioner cited Section 7532 of the Declaratory Judgments Act, which states, in relevant part, that "[c]ourts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." 42 Pa.C.S. § 7532; (Petition ¶¶ 36-37).

until the Court could issue a decision on the merits of the Petition. (Cutler Emergency Application (Cutler Emerg. Appl.) ¶¶ 3-22, 23.)

## I. BACKGROUND & PROCEDURAL HISTORY

Before delving into the background and procedural history of this case, we initially observe that this case touches upon important constitutional principles, namely, that "[e]lections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." Article I, section 5 of the Pennsylvania Constitution, Pa. Const. art. I, § 5. In considering election-related matters, we note it is "[t]he longstanding and overriding policy in this Commonwealth to protect the elective franchise[,]" and that "[o]ur goal must be to enfranchise and not to disenfranchise." *Pennsylvania Democratic Party v. Boockvar*, 238 A.3d 345, 360-61 (Pa. 2020) (citing *Shambach v. Bickhart*, 845 A.2d 793, 798 (Pa. 2004), and *In re Luzerne County Return Board*, 290 A.2d 108, 109 (Pa. 1972)). Furthermore, our Supreme Court has recognized that as far as writs of election for special elections to fill vacant House seats are concerned, "[t]he right at issue is the fundamental right to representation in these House districts[,] . . . which right must be vindicated at special elections." *Fagan v. Smith*, 41 A.3d 816, 817, 819 (Pa. 2012) (citing *Reynolds v. Sims*, 377 U.S. 533, 566 (1964)). Therefore, considering these overarching principles, and for purposes of transparency and, ultimately, clarity to citizens of the Commonwealth, we briefly explain the procedural history of this case and the factual predicate underlying our decision, followed by the averments of the Petition and the Cutler Emergency Application, as well as our reasoning for our January 13, 2023 Order.

By Order dated December 12, 2022, this Court directed, *inter alia*, answers to the Cutler Emergency Application and the filing of applications for leave to intervene, and scheduled a status conference for Wednesday, December 21, 2022. Respondents filed answers and memoranda of law in opposition to the Cutler Emergency Application, pursuant to this Court's directive, generally denying that Petitioner was entitled to the preliminary injunctive relief he sought and instead arguing that the public interest warrants holding the three special elections on February 7, 2023, a date chosen by both Petitioner and Intervenor McClinton, given that election preparations are already well underway in Allegheny County and because enjoining such elections would cause significant harm to the public interest. They further alleged that Petitioner's request for an injunction fails as a matter of law, because it did not meet all six of the mandatory prerequisites for preliminary injunctive relief.

The Pennsylvania Democratic Party (Proposed Intervenor PDP) filed a Petition for Intervention and accompanying memorandum of law in support thereof on December 15, 2022, alleging that it meets the standard for intervention under Pa.R.Civ.P. 2327(4) because it possesses a "legally enforceable interest" that may be affected by a judgment in this action, and, further, it does not meet any of the elements that would foreclose its intervention under Pa.R.Civ.P. 2329. (Petition for Intervention ¶¶ 15, 20-24.)  Only Petitioner opposed Proposed Intervenor PDP's intervention in this case.

Intervenor McClinton also filed an application to intervene and a memorandum of law in support thereof on December 16, 2022, to which there was no objection, and which the Court granted on the record at the status conference held on Wednesday, December 21, 2022, and confirmed by subsequent order.  The Court

4

additionally noted at the conference that it would take Proposed Intervenor PDP's Petition for Intervention under advisement.[4] Also during the status conference, the parties and Proposed Intervenor PDP generally agreed that the issues in this matter are purely legal ones, and that a hearing on the Cutler Emergency Application was likely not necessary.[5] They were ultimately unable to reach an agreement as to any of the three special elections then at issue; they did, however, agree to an expedited briefing schedule.

Thus, by Order dated December 22, 2022, the Court confirmed its intervention ruling, and its decision to defer ruling on Proposed Intervenor PDP's intervention, and directed the Prothonotary to docket Intervenor McClinton's POs. By separate Order, also issued on December 22, 2022, the Court, noting the exigency of the matter, set an expedited briefing schedule; further directed the parties and Proposed Intervenor PDP to file a stipulation of facts; and indicated that the Court would schedule expedited argument/hearing in the matter for a date and time after January 4, 2023, by separate order, if necessary. Given that one of the House Caucus Leaders would have clearly had authority to issue a writ, and that both Leader Cutler and Leader McClinton had issued writs scheduling the special election for February 7, 2023, to fill former Representative Anthony DeLuca's vacant seat in the 32nd Legislative District, the parties and Proposed Intervenor PDP continued their best efforts to reach a stipulation or proposed stipulation regarding that special election.

Pursuant to this Court's December 22, 2022 directive, the parties filed comprehensive briefs in support of and/or in opposition to the Cutler Emergency

---

[4] Although the Court took Proposed Intervenor PDP's Petition for Intervention under advisement, we nevertheless allowed it to participate in these proceedings and file responsive pleadings or Preliminary Objections (POs) and briefs in response to the parties' other filings.

[5] The parties indicated some disagreement as to the facts with respect to Proposed Intervenor PDP's certification of votes theory, discussed briefly *infra*.

Application; Proposed Intervenor PDP filed POs and a brief in support thereof; and Petitioner filed briefs, and an omnibus brief, in opposition to Intervenor McClinton's and Proposed Intervenor PDP's respective POs. The parties and Proposed Intervenor PDP also filed a Stipulation on December 23, 2022, stipulating and agreeing that the special election for the 32nd Legislative District shall be held on February 7, 2023, which we adopted as an Order of the Court on January 3, 2023. (*See* Stipulation filed Dec. 23, 2022.) Therefore, the only issues that remained in this case at the time we issued our January 13, 2023 Order concerned two of the McClinton Writs scheduling special elections for February 7, 2023, to fill the vacant House seats in the 34th and 35th Legislative Districts.

On December 30, 2022, the parties and Proposed Intervenor PDP filed Stipulated Facts, as directed, agreeing to the authenticity of Exhibits A, C-G, and I[6] attached to the Petition (*see* Stipulated Facts at 6-7), as well as Exhibits 1-6[7] attached to the Stipulated Facts (*see* Stipulated Facts at 7-8). They additionally agreed in large part to a number of facts set forth in Petitioner's Petition and the parties'

---

[6] These exhibits include: (1) the writ of election issued by Petitioner on November 30, 2022 (Pet'r Ex. A); (2) former Representative Austin A. Davis's resignation letter (Pet'r Exhibit (Ex.) C); (3) former Representative Summer L. Lee's resignation letter (Pet'r Ex. D); (4) Intervenor McClinton's December 7, 2022 writs of election scheduling special elections for the 32nd (Pet'r Ex. E), 34th (Pet'r Ex. G), and 35th (Pet'r Ex. F) Legislative Districts; and (5) the Acting Secretary's letter rejecting Petitioner's November 30, 2022 writ of election (Pet'r Ex. I).

[7] These exhibits include: (1) the writ of election issued by Petitioner on December 15, 2022, regarding the 34th district, setting May 16, 2023, as the date for the special election (Ex. 1); (2) the writ of election issued by Petitioner on December 15, 2022, regarding the 35th district, setting May 16, 2023, as the date for the special election (Ex. 2); (3) the calendar for the special election in the 32nd district, as published by the Acting Secretary on December 9, 2022 (Ex. 3); (4) the calendar for the special election in the 34th district, as published by the Acting Secretary on December 9, 2022 (Ex. 4); (5) the calendar for the special election in the 35th district, as published by the Acting Secretary on December 9, 2022 (Ex. 5); and (6) a map of the 32nd, 34th, and 35th Legislative Districts in Allegheny County (Ex. 6).

various pleadings and other filings for purposes of disposition of the Cutler Emergency Application, as follows.

All 203 seats of the House were up for election in the November 8, 2022 General Election; 102 Democrats, including former Representative DeLuca,[8] and 101 Republicans won House seats. (Stipulated Facts ¶¶ 5-9; Petition ¶¶ 15-17, 62.) Notwithstanding former Representative DeLuca's reelection on November 8, 2022, his death created a vacancy in the 32nd Legislative District as of December 1, 2022, i.e., the day the terms of service for members elected to the 207th General Assembly began. (Stipulated Facts ¶¶ 8-9, 11-12; Petition ¶¶ 24, 63.) On November 30, 2022, the last day of the 206th General Assembly, then-Speaker Cutler issued a writ of election to the Department and the Board setting February 7, 2023, as the date for a special election to fill former Representative DeLuca's seat in the 32nd Legislative District. (Stipulated Facts ¶ 10; Petition ¶¶ 22-23 & Exhibit (Ex.) A (Cutler Nov. 30, 2022 Writ of Election).) However, on December 7, 2022, the Acting Secretary rejected then-Speaker Cutler's writ as untimely and premature. (Stipulated Facts ¶ 18; Petition ¶ 32 & Ex. I (Acting Secretary's Dec. 7, 2022 Letter).)[9]

Also on December 7, 2022, Intervenor McClinton was sworn in on the House floor for the 207th General Assembly. (Stipulated Facts ¶ 14; Petition ¶¶ 25, 50.) On the same date, former Representative of the 35th Legislative District and Lieutenant Governor-elect Austin A. Davis and former Representative of the 34th

---

[8] Former Representative DeLuca's death occurred too close in time to the November 8, 2022 General Election, such that his name could not be removed from the ballot. (Petition ¶ 19.)

[9] The Acting Secretary cited numerous reasons why she rejected then-Speaker Cutler's writs. (*See* Petition, Ex. I (Acting Secretary's Dec. 7, 2022 Letter).) Although Petitioner purports to challenge the Acting Secretary's action in this regard (*see* Petition ¶ 33), it is not part of his overall request for relief. Given the Stipulation and the lack of controversy, we therefore decline to address the issue, or the Acting Secretary's other reasons, further in this opinion.

Legislative District and member-elect of the United States House of Representatives Summer L. Lee resigned their House seats,[10] following which Intervenor McClinton issued the McClinton Writs to the Department and the Board setting special elections for February 7, 2023, to fill former Representatives DeLuca (32nd), Davis (35th), and Lee's (34th) vacant House seats for the duration of the 207th General Assembly. (Stipulated Facts ¶¶ 15-16; Petition ¶¶ 26-28, 50-51 Exs. C (Rep. Davis's resignation letter), D (Rep. Lee's resignation letter), E-G (Intervenor McClinton's Dec. 7, 2022 writs).[11]) In accordance with the McClinton Writs, the Department and the Board scheduled the three special elections for February 7, 2023. (Stipulated Facts ¶ 17.)

On December 12, 2022, Petitioner was sworn in on the House floor for the 207th General Assembly, after which, on December 15, 2022, Petitioner issued two writs of election to the Department and the Board scheduling special elections for May 16, 2023, which is the next ensuing primary election, to fill the vacancies in the 34th (Lee) and 35th (Davis) Legislative Districts. (Stipulated Facts ¶¶ 21-22.) On or before December 19, 2022, nomination certificates were filed with the Department on behalf of both Democratic and Republican candidates vying for the vacant seats in the 34th and 35th Legislative Districts. (Stipulated Facts ¶ 19.)

In addition, the parties and Proposed Intervenor PDP acknowledged their prior Stipulation adopted as an Order of this Court regarding the special election for the 32nd Legislative District, and further agreed that as of December 30, 2022, there was no Speaker of the House; that the 10-day statutory deadline to issue writs of election for special elections in the 34th and 35th Legislative Districts had

---

[10] Petitioner alleged that these two resignations further reduced the House Democratic Caucus's membership to 99 members. (Petition ¶¶ 26-27, 67.)

[11] These writs were attested to by Chief Clerk Brooke Wheeler. (*See* Petition, Exs. E, F, & G.)

8

expired; that all three Legislative Districts are in Allegheny County and are contiguous; and that the Board is preparing for all three elections to be held on February 7, 2023. (Stipulated Facts ¶¶ 13, 20, 23-25 & Ex. 6 (a map of the 32nd, 34th, and 35th Legislative Districts in Allegheny County); Petition ¶¶ 45-46, Exs. E-G (recognizing there is no Speaker).)

Following the filing of the Stipulated Facts, Intervenor McClinton filed an Emergency Application for Disposition on Motion Pursuant to Pa.R.A.P. 1972 (McClinton Emergency Application) on January 4, 2023, requesting an order dismissing this matter as moot on the basis there is no longer any case or controversy in light of Representative Mark Rozzi being elected as Speaker on January 3, 2023, and his subsequent issuance of two new writs of election on that date (attested to on January 4, 2023), commanding that the special elections for the 34th and 35th Legislative Districts be held on the date set by the McClinton Writs, i.e., February 7, 2023. (McClinton Emerg. Appl. ¶¶ 6, 8-10, 14, 16, 18.) Petitioner opposed the McClinton Emergency Application.

By Order dated January 3, 2023, as amended and supplemented on January 6, January 9, and January 10, 2023, the Court scheduled oral argument on the Cutler Emergency Application; Intervenor McClinton's and Proposed Intervenor PDP's respective POs; Proposed Intervenor PDP's Petition for Intervention; and the McClinton Emergency Application for January 11, 2023, via WebEx videoconferencing, before a panel of Judges.

Following oral argument, on January 13, 2023, the Court issued an Order denying the Cutler Emergency Application on the basis that Petitioner failed to establish he is entitled to the emergency preliminary injunctive relief he seeks, noting that he failed to prove a clear right to the relief he seeks, that he will suffer

9

immediate and irreparable harm without the preliminary injunction, and that the preliminary injunction will not adversely affect the public interest. In so doing, this Court ordered that the special elections to fill the two vacancies in the 34th and 35th Legislative Districts of the House shall be held on February 7, 2023. This Memorandum Opinion explains our reasoning for denying the Cutler Emergency Application in our January 13, 2023 Order, as confirmed by the attached Order.[12]

## II.  PETITION FOR REVIEW

In the sole count of the Petition, as mentioned above, Petitioner alleged that Intervenor McClinton issued the McClinton Writs without constitutional or statutory authority to do so, as she was neither the Speaker of the House, nor the Majority Leader of the House at the time the Writs were issued. (Petition ¶¶ 52-54, 68-69.)  In support, Petitioner cited article II, section 2 of the Pennsylvania Constitution, Pa. Const. art. II, § 2,[13] and Section 628 of the Pennsylvania Election Code (Election Code), 25 P.S. § 2778,[14] which provide that the authority to issue

---

[12] We vacate those provisions of our January 13, 2023 Order that sustained Intervenor McClinton's PO, and dismissed as moot Proposed Intervenor PDP's Petition for Intervention and POs, and McClinton's Emergency Application.

[13] Article II, section 2 of the Pennsylvania Constitution (Election of Members; Vacancies) states:

> Members of the General Assembly shall be chosen at the general election every second year.  Their term of service shall begin on the first day of December next after their election.  Whenever a vacancy shall occur in either House, the presiding officer thereof shall issue a writ of election to fill such vacancy for the remainder of the term.

Pa. Const. art. II, § 2.

[14] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 2778.  Section 628 of the Pennsylvania Election Code (Election Code) states, in relevant part:

> Whenever a vacancy shall occur in either house of the General Assembly whether or not it then be in session, the presiding officer of such house shall, within ten (10)

**(Footnote continued on next page…)**

10

writs of election rests with the presiding officer of the House. (*Id.* ¶¶ 4, 42-43.) Rule 1 (Speaker Presiding) of the 2021-2022 General Operating Rules of the House[15] also provides that the Speaker of the House is the presiding officer. (*Id.* ¶ 44.) However, where there is a vacancy in the office of the Speaker, as there was here, Section 21.13 of the Act of January 10, 1968, P.L. (1967) 925, No. 417 (Act 417), 46 P.S. § 42.121m,[16] authorizes the Majority Leader to carry out the duties of the Speaker,

---

days after the happening of the vacancy, issue a writ of election to the proper county board or boards of election and to the Secretary of the Commonwealth, for a special election to fill said vacancy, which election shall be held at the next ensuing primary, municipal or general election scheduled at least sixty (60) days after the issuance of the writ or such other earlier date which is at least sixty (60) days following the issuance of the writ as the presiding officer may deem appropriate[.]

25 P.S. § 2778.

[15] House Rule 1 (Speaker Presiding) states as follows:

The Speaker shall preside over the sessions of the House. The Speaker may name a member to preside, but the substitution shall not extend beyond an adjournment. The Speaker may appoint a member as Speaker pro tempore to act in the Speaker's absence for a period not exceeding ten consecutive legislative days. As presiding officer and in accordance with Article II § 2 of the Constitution of Pennsylvania and the act of June 3, 1937 (P.L. 1333, No. 320), known as the Pennsylvania Election Code, within ten days after the occurrence of a vacancy the Speaker shall issue a writ for a special election to be held on a date which shall occur on or before the date of the first primary, municipal or general election which occurs not less than 60 days after the issuance of the writ. The Speaker shall not be required to issue a writ of election if the election cannot be scheduled until after the general election. In case of failure to make an appointment, the House shall elect a Speaker pro tempore to act during the absence of the Speaker. The Speaker pro tempore shall perform all the duties of the Chair during the absence of the Speaker.

*See* https://www.house.state.pa.us/rules.cfm (last visited January 17, 2023).

[16] Section 21.13 of the Act of January 10, 1968, P.L. (1967) 925, No. 417, *as amended*, added by the Act of December, 10, 1979, P.L. 488, No. 104, provides that "[i]f any vacancy shall occur during the recess of the Legislature in the office of the Speaker of the House of Representatives, the duties of said office shall be performed by the Majority Leader of the House of Representatives." 46 P.S. § 42.121m.

including the authority to issue writs of election for special elections. (*Id.* ¶¶ 5, 45-46, 48.) Petitioner observed that the Pennsylvania Supreme Court has held, in *Perzel v. Cortes*, 870 A.2d 759 (Pa. 2005), that Section 21.13 authorizes the Majority Leader to issue writs of election between adjournment of the House and the start of the next legislative session. (*Id.* ¶ 49.) He acknowledged, however, that the term "Majority Leader" is not defined in Act 417 but asserts that under 1 Pa.C.S. § 1903(a), "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." (*Id.* ¶ 56.) He pointed to Black's Law Dictionary's definition of "Majority Leader," which defines that term as "[t]he legislator in charge of the legislative caucus that has the most members . . . ." (*Id.* ¶¶ 57-58.) Because article II, section 16 of the Pennsylvania Constitution, Pa. Const. art. II, § 16 (Legislative districts),[17] sets the number of House seats at 203, the Majority Leader is the leader of either the caucus with 102 members, or, if neither caucus has 102, the Majority Leader is the leader of the caucus with the most members. (*Id.* ¶¶ 59-61.)

Further, citing *Zemprelli v. Daniels*, 436 A.2d 1165 (Pa. 1981), for the proposition that only "members elected, living, sworn, and seated" qualify as members of the House, Petitioner contended that as of December 1, 2022, the first day of the 207th General Assembly, the House Democratic Caucus could seat only

---

[17] Article II, section 16 of the Pennsylvania Constitution (Legislative districts) provides:

> The Commonwealth shall be divided into fifty senatorial and two hundred three representative districts, which shall be composed of compact and contiguous territory as nearly equal in population as practicable. Each senatorial district shall elect one Senator, and each representative district one Representative. Unless absolutely necessary no county, city, incorporated town, borough, township or ward shall be divided in forming either a senatorial or representative district.

Pa. Const. art. II, § 16.

12

101 members due to former Representative DeLuca's pre-election death. (Petition ¶¶ 63-65.) He asserted that the two other resignations further reduced that number to 99 members, and, as such, the House Democratic Caucus "cannot claim to have ever had a majority of 102 living members or more members than the Republican Caucus[,]" and it follows that Intervenor "McClinton has no basis to claim the title of Majority Leader." (*Id.* ¶¶ 66-68.) Petitioner claimed this conclusion is consistent with the nonpartisan Pennsylvania Legislative Reference Bureau's (LRB) "Legal Opinion," issued on December 7, 2022, in which the LRB opined that the House Democratic Caucus does not hold a majority of the seats in the House because it is only able to seat 101 living members due to Representative DeLuca's death. (*Id.* ¶¶ 29-31, 70 & Ex. H (Pa. LRB Legal Op.).)[18] Petitioner thus sought an order from this Court declaring that the McClinton Writs are invalid as a matter of law, and that Respondents may not proceed with holding the February 7, 2023 special elections. (Petition ¶¶ 37, 71 & Prayer for Relief.)[19]

## III. CUTLER EMERGENCY APPLICATION

The gravamen of this dispute is the Cutler Emergency Application, which sought a preliminary injunction enjoining the special elections scheduled for February 7, 2023, in the 34th and 35th Legislative Districts, until the Court could issue a full decision on the merits of the Petition. "The sole object of a preliminary

---

[18] The December 7, 2022 LRB Opinion is not explained herein because it is merely advisory and not binding on this Court.

[19] The Acting Secretary and the Department filed an Answer with New Matter to the Petition, informing that December 19, 2022, was the last day to file nomination certificates and papers for the special elections scheduled for February 7, 2023; that multiple candidates had filed nomination certificates for the special elections in the 34th and 35th districts; that the last day to file objections was December 22, 2022; and that the Acting Secretary would certify the names and residences of the candidates on or before January 8, 2023. (Answer & New Matter ¶¶ 76-78.) They also argued that the Petition failed to state a claim for which relief could be granted because it raised nonjusticiable political questions. (*Id.* ¶ 79.)

13

injunction is to preserve the subject of the controversy in the condition in which it is when the order was made, it is not to subvert, but to maintain the existing status until the merits of the controversy can be fully heard and determined." *Appeal of Little Britain Township From Decision of Zoning Hearing Board of Little Britain Township*, 651 A.2d 606, 611 (Pa. Cmwlth. 1994). A preliminary injunction is a temporary remedy granted until the parties' dispute can be fully resolved. *Id.* The party seeking a preliminary injunction bears a heavy burden of proof and must establish all of the following criteria:

> (1) the injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by damages; (2) greater injury would result from refusing the injunction than from granting it, and, concomitantly, the issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) the preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the party seeking injunctive relief has a clear right to relief and is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and[] (6) the preliminary injunction will not adversely affect the public interest.

*SEIU Healthcare Pennsylvania v. Commonwealth*, 104 A.3d 495, 502 (Pa. 2014) (citing, *inter alia*, *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1001 (Pa. 2003)). "Because the grant of a preliminary injunction is a harsh and extraordinary remedy, it is to be granted only when and if each [factor] has been fully and completely established." *Pennsylvania AFL-CIO by George v. Commonwealth*, 683 A.2d 691, 694 (Pa. Cmwlth. 1996) (emphasis in original). However, "if the petitioner fails to establish any one of them, there is no need to address the others." *Lee Publications, Inc. v. Dickinson School of Law*, 848 A.2d

14

178, 189 (Pa. Cmwlth. 2004) (en banc) (emphasis in original) (quoting *County of Allegheny v. Commonwealth*, 544 A.2d 1305, 1307 (Pa. 1988)).

Petitioner alleged he has a clear right to relief and a strong likelihood of success on the merits of his challenge to the validity of the McClinton Writs because the constitutional and statutory authority to issue writs of election rests with the presiding officer of the House of Representatives, which is either the Speaker of the House or the Majority Leader of the House if the Speaker's office is vacant; Intervenor McClinton was neither the Speaker nor the Majority Leader at the time the McClinton Writs were issued; and Intervenor McClinton issued the McClinton Writs without constitutional or statutory authority. (Cutler Emerg. Appl. ¶¶ 30(A)-(D), 38; Br. in Supp. at 11-17.) He next claimed an injunction is necessary to prevent immediate and irreparable harm because Intervenor McClinton's issuance of the McClinton Writs without statutory authority constitutes per se irreparable harm, and, further, her exercise of authority not delegated to her would deprive Petitioner of his statutory right to issue the writs as possible Majority Leader of the House and Leader of the House Republican Caucus, which also constitutes per se irreparable harm. (Cutler Emerg. Appl. ¶¶ 32, 34-35; Br. in Supp. at 17-18 (adding that neither of these harms can be compensated by damages).) Petitioner further claimed that greater injury would result from refusing the injunction than from granting it, because Intervenor McClinton's issuance of the writs constitutes a violation of Section 21.13 of Act 417 and thus per se irreparable harm; it would prevent the possible waste of taxpayer resources and erosion of public confidence in the election system by holding a potentially unlawful special election; and Respondents will not be harmed. (Cutler Emerg. Appl. ¶¶ 33, 36-37; Br. in Supp. at 19-20.) Petitioner asserted an injunction would restore the status quo, which he identified as the time before

15

Intervenor McClinton issued the writs when special elections had not yet been scheduled for the two districts at issue. (Cutler Emerg. Appl. ¶¶ 36, 40; Br. in Supp. at 20-21.) He claimed that an injunction is reasonably suited to abate the offending activity, as the Court need only enjoin the execution of the two writs of election at issue, and that the injunction will not adversely affect the public interest, as there is a greatly relaxed standard of proof for this factor given the violation of law. (Cutler Emerg. Appl. ¶ 39; Br. in Supp. at 21-24.) Petitioner did not dispute Intervenor McClinton's assertion that the public interest would be best served by a full House; however, he claimed that the elections needed to fill the vacancies must arise from valid writs, such as those he issued on December 15, 2022. (Cutler Emerg. Appl. ¶¶ 38, 40; Br. in Supp. at 24-25.)

In response, Respondents and Proposed Intervenor PDP asserted that Petitioner failed to satisfy any of the six essential prerequisites for granting preliminary injunctive relief. The Acting Secretary and the Department have identified the sole issue here as being whether the right of citizens in the 34th and 35th Legislative Districts to elect their representatives should be delayed. (DOS Memo. of Law in Opp. at 11.) With regard to the injunction criteria, the Acting Secretary and the Department contended that the harm of issuing an injunction significantly outweighs the harm of denying one, as Petitioner did not assert any specific injury that would result if the special elections are held as scheduled. Even if he is harmed, it is *de minimis* at best, and greater harm would befall Pennsylvania citizens, and candidates who have already submitted nomination paperwork and begun campaigning, if the already scheduled and publicized elections are cancelled. (DOS Ans. to Emerg. Appl. ¶¶ 32, 36, 40; DOS Memo. of Law in Opp. at 11, 13-14.) Granting the injunction is also against the public interest because it will deprive

16

citizens of Allegheny County of representation in the House for a longer time, sow voter confusion, and undermine the promotion of stability and clarity in elections. (DOS Memo. of Law in Opp. at 14-16.) The Acting Secretary and the Department further contended that the injunction would not maintain the status quo and is not reasonably suited to abate the offending activity. (*Id.* at 16-17.) They took no position, however, on the legal issues in the case and asserted that they have acted appropriately in proceeding with special election preparations pursuant to the facially valid McClinton Writs. (*Id.* at 12.)[20]

The Board contended this matter is moot in light of new Speaker Rozzi's writs confirming the special election date established by the McClinton Writs. (Bd. Memo. of Law at 5.) In the alternative, the Board specifically argued that Petitioner failed to establish that greater injury would result from refusing rather than granting the injunction, and that the injunction will not harm the public interest. (*Id.* at 7-10.) The Board highlighted that it still needed to secure printed, mail-in, and absentee ballots and contact and secure polling locations for 178 polling locations (which locations will develop their own plans for community access); that candidates for the open seats have budgeted and staffed their campaigns and coordinated campaign activities and outreach; that mail-in and absentee ballots will need to be sent to voters and that any delay in doing so would risk voters having to reapply and re-request those ballots; and that the Board has already expended considerable resources preparing for these special elections. (Bd. Memo. of Law at 8-10.)

---

[20] The Acting Secretary and the Department also pointed out that if the special elections are held after February 20, 2023, then voters who indicated back in 2022 that they wished to receive mail-in or absentee ballots for the remainder of the year will need to reapply to receive those ballots. (DOS Memo. of Law in Opp. at 7-8.)

Intervenor McClinton agreed with the Acting Secretary and Respondent that Petitioner failed to establish irreparable harm; that greater injury would result from refusing rather than granting the injunction; and that the public interest would be harmed, and added that Petitioner's request for the extraordinary remedy of disrupting special elections that are already underway is based on speculative assertions that he might possibly become Majority Leader and that the election might possibly be unlawful. (McClinton Ans. to Cutler Emerg. Appl. at 2-5, 8-9.) Further, Intervenor McClinton asserted, the status quo would be destroyed; Petitioner cannot establish a clear right to relief or likelihood of success on the merits because the issues involved are nonjusticiable political questions, as to which *Perzel* controls, and *Zemprelli* is distinguishable; and the injunction is not reasonably suited to abate the offending activity because the relief he seeks is not available as a matter of law. (McClinton Ans. to Cutler Emerg. Appl. at 5-8; Memo. of Law in Opp. at 2-4, n.2.)[21]

Proposed Intervenor PDP's arguments in opposition to the Cutler Emergency Application tracked those of Intervenor McClinton with respect to nonjusticiability and Petitioner's failure to establish a clear right to relief. (PDP Br. in Opp. at 7-8.) However, Proposed Intervenor PDP injected a new theory into this case that Petitioner is unlikely to prevail on the merits as Intervenor McClinton issued the writs pursuant to her statutory authority under Section 21.13 of Act 417, because, as of December 7, 2022, the Democrats held a majority of certified winners of the November 8, 2022 General Election. (PDP Br. in Opp. at 9-11.)

---

[21] Intervenor McClinton also alleges "unclean hands" as a basis for denying the Cutler Emergency Application. (*See* McClinton Ans. to Emerg. Appl. at 10.) Given our disposition, we found it unnecessary to address this argument.

18

Considering the parties' and Proposed Intervenor PDP's arguments, we address each of the prongs required for a preliminary injunction, and our reasoning in concluding they were not met, in turn.

**Clear Right to Relief/Likely to Prevail on Merits**

As noted above, in the sole count of the Petition, Petitioner sought a declaration under the Declaratory Judgments Act that the McClinton Writs are invalid as a matter of law, and that Respondents may not proceed with holding the February 7, 2023 special elections. (Petition ¶¶ 37, 71 & Prayer for Relief.) The longstanding rule is that declaratory judgments are not obtainable as a matter of right. *Ronald H. Clark, Inc. v. Township of Hamilton*, 562 A.2d 965, 968-69 (Pa. Cmwlth. 1989). Rather, whether a court should exercise jurisdiction over a declaratory judgment proceeding is a matter of sound judicial discretion. *Id.* at 969.

"To establish a clear right to relief, the party seeking an injunction need not prove the merits of the underlying claim, but need only demonstrate that substantial legal questions must be resolved to determine the rights of the parties." *SEIU Healthcare*, 104 A.3d at 506 (citing *Fischer v. Department of Public Welfare*, 439 A.2d 1172 (Pa. 1982)). "For a right to be clear, it must be more than merely viable or plausible . . . ." *Wolk v. School District of Lower Merion*, 228 A.3d 595, 611 (Pa. Cmwlth.), *appeal denied*, 240 A.3d 108 (Pa. 2020). "*If the party has met the other requirements for a preliminary injunction* and the underlying cause of action raises important legal questions, the right to relief is clear." *Lieberman Organization v. City of Philadelphia*, 595 A.2d 638, 640 (Pa. Cmwlth. 1990) (emphasis added).

Upon our review of the facts and the parties' arguments in this case, the relevant case and constitutional and statutory law, we are not convinced that

Petitioner satisfies this prong of the test to grant a preliminary injunction. We note that the parties and Proposed Intervenor PDP have all raised viable arguments regarding the appropriate method for determining which House Caucus Leader should be considered the Majority Leader and whether that is justiciable. Thus, Petitioner's right to relief is not clear. Moreover, while there are undoubtedly important legal questions implicated in this case, for the reasons set forth below, Petitioner has not met the other requirements for a preliminary injunction.

**Greater Injury by Refusing the Injunction; Maintaining the Status Quo; Injunction Reasonably Suited to Abate Offending Activity; Public Interest**

As noted above, in order to grant a preliminary injunction, Petitioner had to prove each of the following:

> (2) greater injury would result from refusing the injunction than from granting it, and, concomitantly, the issuance of an injunction will not substantially harm other interested parties in the proceedings;

> (3) the preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; . . . .

> (5) the injunction is reasonably suited to abate the offending activity; and[]

> (6) the preliminary injunction will not adversely affect the public interest.

*SEIU Healthcare*, 104 A.3d at 502. Because these four prongs are closely related and involve similar issues and analysis, we will address them together.

The injunction requested by Petitioner did not satisfy these four prongs or effectively address the concerns raised by the parties to this action. In this regard, we concluded that greater harm would clearly result from granting the injunction,

20

rather than denying it; granting the injunction would not maintain the status quo; the injunction was not reasonably suited to abate the offending conduct; and the injunction would adversely, and significantly, affect the public interest.

The sweeping relief sought by Petitioner in the form of halting two already scheduled and publicized, and extensively prepared-for, special elections for vacant House seats in the 34th and 35th Legislative Districts in Allegheny County a mere 25 days[22] before those elections are set to occur would clearly have caused greater injury than refusing the injunction, precisely because it would have seriously harmed the public interest and orderly administration of special elections, which, as we have repeatedly stated, are already well underway. Enjoining the special elections at this point would have, as the parties have pointed out, deprived voters in the 34th and 35th Legislative Districts of their "clear right to elected representation[ in the House], which right must be vindicated at special elections[,]" *Fagan*, 41 A.3d at 819, and caused voter confusion; harmed the candidates in those districts who have already submitted their nomination paperwork, budgeted and staffed their campaigns, coordinated campaign activities and outreach efforts, and begun campaigning; and harmed Respondents, and even their employees, in their critical work of preparing for and ultimately administering the special elections in the 34th and 35th Legislative Districts, the delay and disruption of which would result in almost certain disenfranchisement of the nearly 100,000 voters residing in those districts. Simply put, there are actual harms identified by the parties in their comprehensive filings that almost certainly would have occurred if the injunction had been granted.

---

[22] This is as of January 13, 2023, the date we issued our Final Order in this case.

21

As for the status quo, which we did not address in our January 13, 2023 Order, we have stated that it is "'the last peaceable and lawful uncontested status preceding the underlying controversy.'" *Hatfield Township v. Lexon Insurance Co.*, 15 A.3d 547, 555 (Pa. Cmwlth. 2011) (quoting *In Re Milton Hershey School Trust*, 807 A.2d 324 (Pa. Cmwlth. 2002)). Stated otherwise, one purpose of a preliminary injunction is to keep the parties in the same positions they had when the case began in order to preserve the Court's ability to decide the issues before it. It is clear that when this case began on December 9, 2022, the status quo was that Intervenor McClinton had already issued the McClinton Writs two days earlier, which the Acting Secretary accepted at some point thereafter as facially valid as she was required to do under *Perzel*, 870 A.2d at 765. Respondents thereafter acted on the writs by scheduling and preparing for the special elections pursuant to various provisions of the Election Code requiring them to do so under very specific time constraints. An order enjoining the special elections at this late stage would have clearly disrupted the ongoing administration of the elections and fundamentally altered the status quo that existed at the time the writs were issued on December 7, 2022. *See Marston v. Kline*, 301 A.2d 393, 397, 399 (Pa. Cmwlth. 1973) (holding that special election scheduled for the 69th day following issuance of writ would proceed on that date given "election machinery [was] already in motion").

Although also not explicitly stated in our January 13, 2023 Order, we further concluded that Petitioner failed to show that the injunction was reasonably suited to abate the offending activity. Petitioner sought an injunction barring Respondents, as well as all persons working in concert with them, from effectuating the McClinton Writs and proceeding with holding the special elections. However, as we have already observed above, the special elections at issue are already well

22

underway, and while Petitioner raises important legal questions in this case, we do not believe enjoining the elections pending a decision on the merits is reasonable at this point in light of the election preparations that have already occurred. At oral argument in this matter, the Board informed that it confirmed the nearly 178 polling places in the 34th and 35th Legislative Districts and that those polling places were at least 97% staffed; that logistics and accuracy testing had been done on nearly 850 ballot machines before members of the public and published; that other machines had been programmed and observed; and that voters had already begun receiving notifications for their pending mail-in ballots in those districts. Accordingly, for these reasons, we concluded that Petitioner failed to meet his burden as to these four prongs of the preliminary injunction test.

## Immediate and Irreparable Harm

We next examined whether Petitioner demonstrated that "the injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by damages." *SEIU Healthcare*, 104 A.3d at 502. To meet this burden, Petitioner was required to present "concrete evidence" demonstrating "actual proof of irreparable harm." *Greenmoor, Inc. v. Burchick Construction Co., Inc.*, 908 A.2d 310, 314 (Pa. Super. 2006). A claim of irreparable harm cannot be based on speculation and hypothesis, and for purposes of a preliminary injunction, the harm must be irreversible before it is deemed irreparable. *Id.* at 314; *see also Kiddo v. American Federation of State* (Pa. Cmwlth., No. 468 C.D. 2019, filed August 3, 2020), 2020 WL 4431793, at *23 (quoting *Novak v. Commonwealth*, 523 A.2d 318, 320 (Pa. 1987), and stating that "the alleged harm or consequences must not be speculative in nature and [that] 'speculative considerations . . . cannot form the basis for issuing [a preliminary injunction]'").

As mentioned above, Petitioner asserted that an injunction was necessary to prevent immediate and irreparable harm because Intervenor McClinton's issuance of the McClinton Writs without constitutional or statutory authority constitutes per se irreparable harm and, further, because her exercise of authority not delegated to her would deprive Petitioner of his statutory right to issue writs as "possible" Majority Leader of the House and as Leader of the House Republican Caucus, which also constitutes per se irreparable harm. In support of these assertions, Petitioner cited *Wyland v. West Shore School District*, 52 A.3d 572 (Pa. Cmwlth. 2012), and *Grine v. County of Centre*, 138 A.3d 88 (Pa. Cmwlth. 2016). (Emerg. Appl. ¶ 32, 34; Br. in Supp. of Emerg. Appl. at 17-19.)

We acknowledge that the failure to comply with a statute and the deprivation of a statutory right may constitute irreparable harm per se under *Wyland* and *Grine*. However, we note, *Wyland* dealt with a school district's refusal to provide transportation to school children despite their status as resident pupils, where the applicable statute mandated school transportation to resident pupils. *Wyland*, 52 A.3d at 583. This Court found that the asserted harm was irreparable per se, because the school district deprived the resident children of their statutory right to transportation, and that an injunction was necessary to mandate compliance with the statute. *Id.* Here, however, there does not appear to be any statute that has been violated, as Section 21.13 of Act 417, 46 P.S. § 42.121m, provides only that the Majority Leader assumes the Speaker's duties when the Speaker's office is vacant. At this point, we cannot say who the Majority Leader is or who it should be. Petitioner therefore has not shown a clear right to relief or immediate and irreparable harm.

24

*Grine* dealt specifically with requests for records under the Right-to-Know Law (RTKL),[23] that implicated records and related to activities of the judiciary, and a county agency's failure to fully comply with the RTKL's disclosure provisions, which has been held to be sufficiently injurious to constitute irreparable harm. *Grine*, 138 A.3d at 100-01. Notably, the harm asserted in *Grine*, i.e., the violation of the RTKL's statutory scheme, a potential separation of powers violation, and interference with the judicial agency's power of supervision over its records, as well as the county agency's improper disclosure of protected information of the judiciary, was found not to be speculative because the county agency already received other requests, and likely would receive more in the future, implicating judiciary records. *Id.*

Unlike in *Grine*, Petitioner's allegation that he would be deprived of his statutory right to issue writs of election as **potential** Majority Leader of the House is, at best, a speculative consideration, which cannot form the basis for issuing the extraordinary preliminary injunctive relief sought here. *See Kiddo*, slip op. at *23. Petitioner has otherwise failed to produce any "concrete evidence" demonstrating "actual proof of irreparable harm" that is irreversible. *Greenmoor, Inc.*, 908 A.2d at 314. As such, Petitioner failed to meet his burden of proving immediate and irreparable harm for purposes of the preliminary injunction.

However, even assuming the legitimacy of Petitioner's asserted harm, we note that, in issuing our January 13, 2023 Order, we found such harm paled in comparison to the harms to the public interest and the electoral process asserted by the other parties that almost certainly would have resulted had we granted the injunction.

---

[23] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

## IV. CONCLUSION

As the United States Supreme Court, our own Supreme Court, and this Court have previously recognized regarding elections, albeit in the context of legislative reapportionment:

> In three of the reapportionment cases cited hereinbefore, . . . , the courts clearly stated that when the [s]tate's election machinery is already in motion, equitable considerations permit a court to consider the factual circumstances, the mechanics and complexities of the law. Those cases held that, if in the discretion of the court, justice and practical considerations deem it appropriate to proceed with the pending election, the court may permit an election to proceed even though it be technically unlawful or unconstitutional.

*Marston*, 301 A.2d at 399. We found no reason not to apply this same logic here given the facts of this case, in which it has already been established that the special elections for the 34th and 35th Legislative Districts have been scheduled for February 7, 2023, since December 7, 2022, when Intervenor McClinton issued the McClinton Writs, that Respondents have undertaken vast measures to prepare for the special elections since that date, that political parties and bodies likewise have undertaken to nominate candidates, and that those candidates have begun campaigning and taking the required steps to comply with various provisions of the Election Code in seeking to be placed on the special election ballots. If we were to grant the injunctive relief Petitioner seeks and halt these two special elections, there is no question that the electors of the 34th and 35th Legislative Districts in Allegheny County would be without representation in the House for an unreasonable period of time. Notwithstanding the validity or invalidity of the McClinton Writs, and the purported invalidity of holding these special elections as scheduled given the

uncertainty surrounding the McClinton Writs, we believed the public interest was better served by permitting the special elections to go forward as scheduled.

Accordingly, for the foregoing reasons, we issued our Order on January 13, 2023, denying Petitioner's Emergency Application for Special Relief in the Nature of a Preliminary Injunction, as confirmed in the attached Order.


_____
MICHAEL H. WOJCIK, Judge


Judge McCullough did not participate in the decision of this case.
Judge Covey did not participate in the decision of this case.
Judge Wallace did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Representative Bryan Cutler,            :
Leader of the Republican Caucus        :
of the Pennsylvania House of           :
Representatives,                       :
                                       :
                    Petitioner         :
                                       :
          v.                           :        No. 588 M.D. 2022
                                       :
Leigh M. Chapman, Acting Secretary     :
of the Commonwealth, The               :
Pennsylvania Department of State,      :
and The Board of Elections of          :
Allegheny County,                      :
                                       :
                    Respondents        :

**O R D E R**

AND NOW, January 25, 2023, upon consideration of the Emergency Application for Special Relief in the Nature of a Preliminary Injunction (Emergency Application for Special Relief), filed by Petitioner Representative Bryan Cutler, Leader of the Republican Caucus of the Pennsylvania House of Representatives; the Preliminary Objections filed by Intervenor Joanna E. McClinton, Leader of the Democratic Caucus of the Pennsylvania House of Representatives (Intervenor McClinton), and Proposed Intervenor Pennsylvania Democratic Party (Proposed Intervenor PDP), respectively; the Petition for Intervention filed by Proposed Intervenor PDP, which Petitioner opposes; and Intervenor McClinton's Emergency Application for Disposition on Motion Pursuant to Pa.R.A.P. 1972 (Emergency Application for Disposition), and the answers and Briefs in Support of and/or in Opposition thereto, and upon further reflection of this matter following argument before a panel of this Court on January 11, 2023, it is hereby **ORDERED** as follows:

1. This Court's January 13, 2023 Order is **VACATED, in part**, to the extent that Order sustained Intervenor McClinton's Preliminary Objection as to nonjusticiability of the claims made by Petitioner in his Petition for Review in the Nature of a Complaint for Declaratory Judgment, and dismissed as moot Proposed Intervenor PDP's Petition for Intervention and Preliminary Objections, and Intervenor McClinton's Emergency Application for Disposition. Intervenor McClinton's Preliminary Objections, Proposed Intervenor PDP's Petition for Intervention and Preliminary Objections, and Intervenor McClinton's Emergency Application for Disposition shall now be considered by the Court in due course.

2. The Court's January 13, 2023 Order is otherwise **CONFIRMED** to the extent that Order denied Petitioner's Emergency Application for Special Relief on the basis he failed to establish that he is entitled to an emergency preliminary injunction, and directed that the special elections to fill the vacancies in the 34th and 35th Legislative Districts of the Pennsylvania House of Representatives shall be held on February 7, 2023. The Court notes that the appeal period triggered by the January 13, 2023 Order with respect to the Court's denial of the requested preliminary injunction shall begin anew from the date of this Order.

3. **Nothing in this Order is to be read as affecting the Court's January 13, 2023 ruling that the enumerated special elections shall be held on February 7, 2023.**

_____
MICHAEL H. WOJCIK, Judge

2